**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BRUCE M. ZESSAR, individually and on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| | ) | No. 05 C 1917 |
| v. | ) ) | |
| **WILLARD R. HELANDER, Lake County Clerk, et al.,** | ) ) ) ) | HONORABLE DAVID H. COAR |
| **Defendants.** | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Before this Court is Plaintiff's Motion for Class Certification of both a Plaintiff Class and a Defendant Class. Plaintiff defines the proposed plaintiff class, somewhat awkwardly, as "all Illinois registered voters whose submitted absentee ballot was rejected without providing them notice and opportunity to correct prior to the official canvass." Plaintiff also seeks to certify a proposed defendant class, defined as "all Illinois county election officials operating under the authority of the Illinois Election Code."

**I.  PLAINTIFF CLASS**

Under Rule 23 of the Federal Rules of Civil Procedure, in order to proceed as a plaintiff class, a plaintiff must demonstrate that 1) the number of individuals in the proposed class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact that are common to the class; 3) the claims or defenses of the named parties are typical of the claims or defenses of the class; and 4) the representative party will fairly and adequately protect the

interests of the class. Fed.R.Civ.P. 23(a). In addition, Plaintiff contends that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

### A. Rule 23(a) Factors

#### 1. Numerosity

The parties agree that the number of Illinois absentee voters whose ballots were rejected in the November 2004 election was approximately 1,200.[1] Defendants seek to parse that group more finely, asserting that it contains several categories: (1) all rejected absentee ballots; (2) absentee ballots correctly rejected because "the signature did not match"; and (3) absentee ballots *incorrectly* rejected because "the signature did not match." The Illinois Board of Elections argues that Zessar's claim fits within the last of these categories, and that it is unknown how many other absentee ballots were rejected on this basis. But Zessar does not seek to certify a class of plaintiffs whose circumstances exactly match his. Instead, his claim seeks procedural due process for *all* absentee voters whose ballot was rejected for any reason and who did not have notice of such rejection or an opportunity to cure any alleged defect prior to the official canvass date. This class necessarily encompasses the broadest of the categories ISBE has identified. Federal courts have certified classes of as few as 25 members. *Harris v. Gen. Dev. Corp.*, 127 F.R.D. 655, 660 (N.D. Ill. 1989). In this instance, it is undisputed that joinder of all

---

[1] Plaintiff calculates that 1,291 absentee ballots were not counted in the November 2004 election. Defendant ISBE notes that "[o]bviously the total number of disqualifications is higher because some large counties, such as Cook, did not report the number of disqualifications." (ISBE Resp. Br. at 5).

plaintiffs would be impracticable, at the least. *Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391, 399 (N.D. Ill. 1999).

    **2.**    **Commonality**

Under Rule 23(a)(2), the proposed class must have common, but not necessarily identical, questions of law or fact. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Plaintiff asserts that there is an overriding question of law applicable to every member of the class, namely whether the Illinois election authorities are under an obligation to provide timely notice of the absentee ballot's rejection and an opportunity to the absentee voter to rehabilitate or defend his or her ballot before the final vote canvass is complete. In addition, there is a "common nucleus of operative fact" relating to the entire proposed class because none of its members received notice or had an opportunity to rehabilitate the rejection of their absentee ballots. ISBE argues that this is simply a "general commonality" which fades in the face of the factual and legal differences between rejected absentee voters. For example, an absentee voter who died after mailing the ballot but before the election (and whose death was known to the election judges) poses different issues different than Zessar. Defendant Helander argues that Zessar's situation differs from that of other absentee voters because he was absent from Lake County on Election Day and the days immediately thereafter only during working and commuting hours. Otherwise, he was present in Lake County. Of the 26,578 absentee ballots mailed in Lake County for the November 2004 General Election, Helander asserts that approximately 7,696 were connected with special programs for individuals who are out of the state and the country on Election Day, including individuals serving in the Armed Forces, citizens living abroad, students away at school, and "snowbirds," or people on extended visits out of state. Again, however,

Defendants overstate superficial differences between potential members of the class, without disputing Plaintiff's essential assertion of the unifying common question of law. Complete commonality is not required; some factual differences are inevitable and may be sufficiently significant to preclude some individuals from joining the class. Common nuclei of fact typically exist where the defendants engaged in "standardized conduct towards members of the proposed class," such as rejecting their absentee ballots without providing them both notice and an opportunity to rehabilitate the ballot before the canvass date. *Keele*, 149 F.3d at 594. Here, sufficient commonality exists among proposed class members to satisfy Rule 23(a)(2).

### 3. Typicality

The typicality analysis is closely related to the question of commonality. A claim is "typical" if it arises "from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citations and internal quotation omitted). Thus, a plaintiff's claim must have the "same essential characteristics as the claims of the class at large." *Id.* Plaintiff contends that he alleges the same deprivation of due process as every other member of the class, and thus easily meets the typicality requirement. Defendants disagree on the ground that Plaintiff's situation is factually distinguishable from that of other potential class members. Again, however, Defendants focus on superficial distinctions without disputing Plaintiff's essential claim. By rejecting absentee ballots without providing the absentee voters with notice and an opportunity to challenge the rejection by rehabilitating their ballots, Defendants engaged in the same course of conduct toward Zessar and all members of the

class. Zessar is now suing under 42 U.S.C. § 1983 for vindication of his constitutional right to due process. Zessar's claim meets the typicality requirement. *Keele*, 149 F.3d at 595.

### 4. Adequacy of Representation

Rule 23(a)(4) permits class certification only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This determination rests on both the adequacy of the named plaintiff and on the adequacy of the plaintiff's named counsel. Plaintiff describes himself as the "classically respected class representative," whose interests "are exactly the same as those of the rest of the Class." (Pl.'s Br., at 10). In addition, Plaintiff asserts that his counsel, Clinton Krislov, and the firm of Krislov & Associates, Ltd., has "an extensive history prosecuting class action litigation," with the necessary supporting legal and financial resources.[2] Defendants object for the same reasons they object to the commonality and typicality factors. The only argument that might defeat adequacy of representation is that after Zessar allegedly called the Lake County election authority to request an absentee ballot, he received both an absentee ballot application and an absentee ballot. According to Defendants, Zessar completed both the application and the ballot and returned them at the same time, prior to Election Day. There is, however, no indication from the record that this was sufficient to disqualify Zessar as an absentee voter. Further, the reason given for rejecting his absentee ballot was that the "signatures do not match," not that he was not an approved absentee voter.[3] Thus,

---

[2] Defendant ISBE noted that it objected to Plaintiff's counsel but elaborated no further. (ISBE's Resp. Br., at 9, n.3). That is insufficient grounds for finding inadequacy and this Court will disregard the objection.

[3] To the extent that Lake County election officials erred in sending an absentee ballot to Zessar before receiving his written application–which the record does not clearly identify as counter to Lake County policy or the Illinois Election Code–then Zessar was placed in the

Zessar was in the same situation as every other member of the potential class: an absentee voter whose ballot was rejected without providing either notice or an opportunity to rehabilitate the ballot prior to the official canvass date. *See Williams v. Brown*, 214 F.R.D. 484, 486 (N.D. Ill. 2003). Zessar is, therefore, a representative class member.

**B.    Rule 23(b)(2)**

In addition to satisfying the requirements of Rule 23(a), a class plaintiff must also demonstrate that "the party opposing the class has acted or refused to act on grounds generally applicable to the class," thereby making class action appropriate. Fed. R. Civ. P. 23(b)(2). In this instance, Plaintiff alleges that the procedures for rejecting absentee ballots set forth in the Illinois Election Code deprived him, and every member of the potential class, of due process under the law. Based on the facts in the record, it is evident that the Illinois Election Code does not require state and local election authorities to take any action to notify and afford an opportunity for absentee ballot rehabilitation *prior* to the official canvass date to an absentee voter whose ballot has been rejected. Indeed, the Election Code contains no process whereby an absentee voter may "appeal" a rejected ballot nor does it require notice of ballot rejection within any particular time period. 10 ILCS 5/19-10. Thus, it is clear that the defendants and all Illinois state and local election authorities "acted or refused to act on grounds generally applicable to the class."

---

position of being simultaneously an absentee ballot *applicant* and an absentee *voter* by Lake County itself. Thus, Lake County may not pick and choose how it chooses to regard him for the purpose of this suit.

## II. DEFENDANT CLASS

### A. Rule 23(b)(1)

Because Zessar seeks not only certification of a plaintiff class but also of a defendant class, the Court will examine the factors of Rule 23(b)(1). *Henson v. E. Lincoln Twp.*, 814 F.2d 410, 412-415 (7th Cir. 1987) (holding that defendant classes are not permitted under Rule 23(b)(2)). Rule 23(b)(1)(B) permits a class action when separate actions could result in a determination which "as a practical matter would be dispositive of the interests of other [class] members ... or substantially impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). Defendant Illinois State Board of Elections states that "it is difficult to see how one such claim against one county would impair the rights of another county faced with different facts." (ISBE Resp. Br., at 10). But this overstates the issue by insisting on defining the plaintiff class as those absentee voters whose ballots were rejected for non-matching signatures. This Court previously has noted that it does not define the class so narrowly, but rather as absentee voters whose ballots were rejected without providing them with notice and an opportunity to rehabilitate the ballot prior to the official canvass date. It is not clear to this Court why a determination in the instant case would not, as a practical matter, be dispositive of the interests of the remaining 109 Illinois election authorities. Inconsistent election procedures between counties would give rise to additional future litigation against defendants. This Court finds, instead, that the proposed defendant class satisfied Rule 23(b)(1).

B.  Rule 23(a) Factors

1.  Numerosity

Plaintiff contends that the numerosity requirement is easily met because there are more than 100 members of the proposed defendant class: the 110 election authorities in Illinois and the Illinois State Board of Elections. He contends that joinder of all election authorities and the state board is impracticable, albeit not impossible. *Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391, 399 (N.D. Ill. 1999). Despite admitting that there is no "magic number" of parties to make joinder impracticable, Plaintiff contends that a class size of 40 or more is "generally enough to satisfy the numerosity requirement." (Pl.'s Br. at 5, citing *Johnson v. Rohr-Ville Motors, Inc.*, 189 F.R.D. 363, 368 (N.D. Ill. 1999)). Defendants contend that a defendant class is unnecessary and that joinder is feasible. As support, they argue that the names and business addresses of the 110 election officials and the Illinois State Board of Elections are public information and readily accessible. The "test for impracticability of joinder is not simply a test on the number of class members." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986). Joinder may be feasible, but that does not make it practicable. The impracticability inquiry examines the potential class size, the ease of identifying members and determining their addresses, ease of service on members, the geographic dispersion of class members, and the ability of individual class members to bring or defend their own claims. *See, e.g., Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (N.D. Ill. 1969); *see also Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 73 (D.N.J. 1993). Plaintiff does not assert that the size of the class or the names and addresses of its members are unknown. He contends, however, that they are sufficiently numerous to render joinder impracticable. In addition, they share an interest in

having uniform election procedures which strongly mitigates in favor of their inclusion in a defendant class here. For these reasons, the numerosity requirement is satisfied.

### 2. Commonality

Rule 23(a)(2) requires a question of law or fact "common to the class." Zessar asserts that standardized conduct toward class members establishes a common nucleus of operative fact which satisfies the commonality requirement. *Keele*, 149 F.3d at 594. The fact that there is "some factual variation among the class grievances will not defeat a class action." *Rosario v. Livaditas*, 963 F.2d 1013, 1017 (7th Cir. 1992) (citing *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir.), *cert. denied*, 451 U.S. 914 (1980). Defendant Helander contends that Zessar described Helander and Lake County as unusual among Illinois election authorities in the way it provides notice of rejected absentee ballots, and thus there is no commonality among proposed defendant class members. This argument is unavailing. It is true that Zessar contends that most Illinois election authorities provide relatively prompt notice of absentee ballot rejection whereas Lake County and Defendant Helander "take a more leisurely approach." (Zessar's Combined Resp. To Defs.' Mtns. for Summ. J., at 10). But, more to the point, Zessar alleges that *no* election authority in Illinois provides pre-deprivation notice and opportunity for rehabilitation prior to the official canvass date. In that regard, Lake County and Defendant Helander are identical to all other Illinois election authorities. Thus, commonality is established.

### 3. Typicality

Zessar argues that Defendant Lake County's defenses "have the same essential characteristics as the claims of the class at large." *De La Fuente*, 713 F.2d 225. As support, Zessar contends that Lake County, like the other Election Authorities, acts pursuant to the

provisions of the Illinois Election Code and under the guidance and procedures of the Illinois State Board of Elections. As such, Lake County acts in a way that is procedurally uniform with the other Election Authorities, despite factual differences between them. Defendants contend that there are significant differences between the defendants which defeat a typicality finding. These differences include varying population count of different counties, differing voting systems (punch cards, optical scan technology, etc.), differing numbers of precincts and election judges, differing numbers of rejected absentee ballots, and different incidences of discovery recounts and election contests. These factors, defendants argue, would lead to "wide variations in post election procedures" and would prevent them from providing notice and hearing to rejected absentee voters. These objections go to the form of any remedy rather than defeating typicality. They do not lead to the conclusion that the named defendants' defenses will not be typical of the class. Typicality is satisfied.

### 4. Adequacy of Representation

Defendant Lake County asserts that it cannot adequately represent the proposed defendant class because the Illinois Counties Code limits the duty of the Lake County State's Attorney to "defend[ing] all actions and proceedings brought against his county, or against any county or State officer, in his official capacity, within his county." 55 ILCS 5/3-9005(a)(4). Lake County interprets this provision to mean that the Lake County State's Attorney can only provide "representation for officials within Lake County." (Def. Helander's Opp. Br., at 13). Thus, because all of the potential class members are officials of other counties or municipalities outside Lake County, the Lake County State's Attorney cannot represent them. But the Illinois Counties Code also requires a State's Attorney to "perform such other and further duties as may, from

time to time, be enjoined on him by law." 55 ILCS 5/3-9005(a)(11). Acting as representative class counsel in a case such as this clearly falls within that section of the Code. Thus, defendants' counsel can provide adequate representation of the defendant class' interests.

Defendant Lake County also argues that it is inadequate to represent the interests of the defendant class members because of the "significant differences between the voting systems and resultant procedures" in each county. But these are not the issues in this case. Instead, the issue is the procedure for handling rejected absentee ballots. The parties agree that the Illinois Election Code is silent about the timing of providing notice or about any opportunity for rehabilitation prior to the official canvass date. In this regard, Lake County is identical to the other members of the defendant class; all of the class members reject absentee ballots without providing notice and an opportunity to rehabilitate before the official canvass date. As such, the named defendants will adequately represent the defendant class.

## Conclusion

For the foregoing reasons, this Court grants Plaintiff's motion to certify a plaintiff and a defendant class.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **March 7, 2006**