IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE M. ZESSAR | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  05 C 1917 |
| v. | ) | |
| | ) | |
| WILLARD R. HELANDER, Lake County Clerk, et al. | ) | HONORABLE DAVID H. COAR |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

**I.  FACTS**

**Background Summary**

Plaintiff Bruce M. Zessar is a resident of Lake County, Illinois, but works in Chicago's Loop area. In early October 2004, Zessar contacted the Lake County Clerk's office about requesting an absentee ballot because he expected to be absent from Lake County on Election Day that year. Zessar received an absentee ballot application and an absentee ballot by mail. He completed the application and returned it to the Clerk's office by mail. He voted the absentee ballot, signed and dated the certification form on the accompanying envelope on October 4, 2004, and returned it by mail to the Lake County Clerk's Office, well before the November 2, 2004 General Election..

In mid-January 2005, some two and a half months after the November 2004 election, Zessar received a yellow Notice of Challenge postcard by mail from the Lake County Clerk's

office. The Notice of Challenge card, which had been prepared on the night of the election by Lake County election judges, informed Zessar that election officials in Moraine Precinct number 215 (Lake County) had determined that Zessar's signature on his absentee ballot did not match the signature on file on his voter registration card and that his ballot had been rejected. All parties now agree that this determination was erroneous. Zessar's vote was not cast and did not count in the election results. For the November 2004 election, Lake County reported 538 rejected ballots from a total of 458 precincts.

The final election results for Lake County had been posted on the County Clerk's website on November 17, 2004, approximately two weeks after Election Day. The results were labeled "unofficial," although the Lake County operations manager state that they were final. Under Illinois law, county offices were required to complete the abstract of votes and official canvass for county offices by November 23, 2004. The Illinois State Board of Elections must complete the official canvass and abstract of votes for state and judicial offices by 31 days after the election.

The Illinois Election Code and related regulations require that a rejected absentee voter must receive notice of the ballot rejection but otherwise give no guidance about the time frame in which such notice must be given. State law makes no provision for a rejected absentee voter to challenge the ballot rejection or to have any form of hearing prior to the rejection of the ballot or completion of the official canvass.

**P.A. 94-1000**

On July 3, 2006, the Governor signed into law P.A. 94-1000 ("the Act"), which amended Article 19 and 20 of the Election Code, 10 ILCS 5/19-8(g) and (g-5) and 10 ILCS 5/20-8(g) and

(g-5). The Act requires that, for in-person absentee ballots, the clerks at the locations where the absentee voting occurs must verify the absentee voter's signature, reasonably ascertain the identification of the voter, verify the voter's registration and precinct, and determine the proper ballot style prior to issuing the absentee ballot. These in-person absentee ballots are processed and tabulated in the election authority's central location at the conclusion of election day.

The Act also provides that, for mailed-in absentee ballots, rejection decisions must be made within two days of receipt and notification of the rejection must be sent to the absentee voter within two days of the decision, and in all cases, prior to the end of the 14-day period for counting provisional votes.

An absentee ballot may be rejected for several statutory reasons, including (1) non-matching signature, (2) an opened and resealed absentee ballot envelop, (3) a prior early or grace period ballot from the same individual, (4) an in-person voted ballot on election day from the same person, and (5) voter was not duly registered in the precinct.

The act further provides that voters with rejected absentee ballots must be given an opportunity to challenge the rejection decision before a panel of three election judges before the closing of the period for counting provisional ballots. This entitles the voter to a pre-deprivation hearing before the 14th day after the election. The provisions of the Act extend to military and overseas citizens.

**Procedural History**

On April 1, 2005, Zessar brought a class action complaint against Willard Helander, the Lake County Clerk, the Lake County Board of Elections, Lake County Election Judges, the Illinois State Board of Elections and the members thereon. Zessar claims that the lack of notice

and an opportunity to rehabilitate his absentee ballot before the official election canvass date violated his constitutional right to due process under the Fourteenth Amendment to the United States Constitution. As relief, Zessar asks this Court to declare unconstitutional certain provisions of the Illinois Election Code which relate to absentee voting, to order the State Board of Elections to require pre-deprivation notice and hearing to absentee voters whose ballots are challenged, to award reasonable attorney's fees and costs, and to grant other such legal or equitable relief as the Court finds proper. Plaintiff also filed a motion for certification of both a plaintiff and a defendant class in this matter, which this Court granted.

On March 13, 2006, Plaintiff's motion for summary judgment was granted in part and denied in part. This court found that the Illinois Election Code provisions regarding the casting of absentee ballots, 10 Ill. Comp. Stat. 5/19-9, violated absentee voters' due process rights. Although plaintiffs had been damaged by the rejection of their ballots, this Court did not find that economic damages were appropriate or that equitable relief was required beyond what was necessary to implement a constitutional absentee voting system. This court ordered that both Parties present proposed procedures for providing timely notice and pre-deprivation hearing to absentee voters whose absentee ballots have been rejected. The proposals are currently pending. Presently before the court is Defendants' motion to dismiss for mootness based on the newly passed P.A. 94-1000.

## II.     STANDARD OF REVIEW

When reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1), the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. See *Long v. Shorebank*

*Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The movant may use affidavits and other material to support its motion, *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), and the court may look beyond the pleadings and weigh any evidence that has been submitted on the issue to determine whether subject matter jurisdiction exists. See id; *Long*, 182 F.3d at 554.

### III. ANALYSIS

Defendants argue that the passage of the P.A. 94-1000 provides procedures for timely notice and pre-deprivation hearings for absentee voters, rendering Plaintiffs' claims of inadequate due process for absentee voters moot. Generally, when a statue is enacted while litigation is pending which gives the Plaintiff what he or she sought in the litigation, the underlying claim is rendered moot. *Miller v. Benson*, 68 F.3d 163 (7th Cir. 1995). Defendants apply a two-pronged analysis to determine whether the newly enacted statute renders the litigation moot. *National Black Police Ass'n v. District of Columbia*, 323 U.S. App. D.C. 292 (D.C. Cir. 1997). Although this court is not bound by the decisions of other circuits, due weight is given to their reasoning and standards.

In *National Black Police Ass'n*, the D.C. Circuit required that the party moving for mootness demonstrate that (1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id*. Defendants argue that the new P.A. 94-1000 meets both these prongs in the current litigation by providing all Illinois absentee voters whose ballots were rejected with timely notice (sent within 4 days) and opportunity for a pre-deprivation hearing before final canvass with a panel of three election judges.

We agree with the Defendants as to timely notice, but find the Defendants' arguments for pre-deprivation hearing unsatisfactory on two counts. First, as the Plaintiffs allege, the Act leaves open how absentee voters who are absent for a long period of time would be given an opportunity to be heard. Individuals who are absent for the period that covers the in-person absentee voting dates as well as the dates available for the pre-deprivation hearing before the three election judges are denied the opportunity to be heard prior to the final canvass, because he or she could not appear in person. However, it is precisely for the voters who cannot appear in person that an absentee voting system exists. Thus, the alleged violation may recur for those who are absent for an extended period of time, and the statute does not completely eradicate the effects of the alleged violation. As such, the issue of the whether the statute properly remedies the constitutional violation remains "live," and Plaintiffs' claim is not moot.

Second, we are not satisfied with the Defendants' response as to whether local election authorities are prepared to have a panel of election judges available after the election to decide disputes. Defendants' answer to this court's inquiry summarized the provisions of the statute, but did not address the feasibility and practical implementation process of the pre-deprivation hearing. It is unclear how often and for what duration all three judges will sit for hearing. Will there be a panel of three judges waiting to hear rejected absentee voter objections everyday? Are the local authorities prepared to implement this? Are there resources and judges in place for this coming election? While legislation has taken a step towards remedying Plaintiffs' constitutional violations, it is not yet clear that the implementation will yield a constitutional absentee voting system. Because questions still remain as to the details of the pre-deprivation hearing, we can

not conclude that there is no reasonable expectation that the alleged violation would recur, or that the statutory relief completely eradicates the alleged violation. Thus, the case is not moot.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss for mootness is DENIED, and this court retains jurisdiction over this case. This court does not reach the issue of attorney's fees and costs at this stage of the proceedings.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **October 10, 2006**